## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Paul Blackmer

      v.                                    Civil No. 06-cv-158-PB

Warden, Northern New Hampshire
Correctional Facility, et al.

### REPORT AND RECOMMENDATION

Pro se plaintiff Paul Blackmer has filed a complaint and
amendments thereto, pursuant to 42 U.S.C. § 1983, alleging
violations under the First, Eighth and Fourteenth Amendments to
the United States Constitution (document nos. 1, 6-8, 10 and 12-
14).  Seeking injunctive and monetary relief, he brings this
action against officers and employees of the New Hampshire
Department of Corrections ("NHDOC") and the Northern New
Hampshire Correctional Facility ("NCF").[1]

The complaint is before me for preliminary review to

---

[1]Construed liberally, the complaint names as defendants
William Wrenn, Commissioner of the NHDOC, and the following NCF
employees: Larry Blaisdell, Warden; Ms. Poulin, Media Generalist;
and corrections officers/employees Dennis Cox, Ms. Dolan, R.
Gosselin, Daniel Millis and Burdick.

determine whether, among other things, it states a claim upon which relief may be granted.  See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I conclude that Blackmer has alleged First and Fourteenth Amendment claims based on the denial of access to the courts against: (1) Poulin, Dolan, Millis, Cox, Blaisdell and Wrenn arising from access to the NCF law library; (2) Poulin, Dolan and Cox arising from access to photocopy and notary services; and (3) Dolan and Millis arising from the interference with legal mail.  I recommend dismissal of all remaining claims.

Also filed are four motions with attachments (document nos. 10, 12-14).  The motions are granted to the extent Blackmer seeks to demonstrate exhaustion of administrative remedies and further amend his complaint.

### Standard of Review

In reviewing a pro se complaint, this court must construe the pleading liberally and in favor of the pro se litigant.  See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the

plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988).  I apply this standard in reviewing Blackmer's complaint.

<u>Background</u>

     Crediting the factual allegations in the complaint in the light most favorable to Blackmer, the material facts are as follows.  While incarcerated at the NCF during November 2005 through July 10, 2006, Blackmer claims, defendants have subjected him to various constitutional deprivations.  First, he claims that defendants have denied him meaningful access to the courts by restricting his access to the NCF library and its resources, denying him adequate library facilities, prohibiting him from giving or receiving legal assistance, denying him adequate photocopy and notary services, seizing his legal documents and interfering with his legal mail.  Second, he claims that defendants have subjected him to verbal threats.  Lastly, he

appears to challenge the constitutionality of his state court conviction and confinement.  Blackmer brings this action pursuant to Section 1983, alleging that defendants' acts and omissions rise to the level of constitutional deprivations in violation of his First, Eighth and Fourteenth Amendment rights.  He seeks monetary and injunctive relief, including a transfer to the New Hampshire State Prison ("NHSP").

<u>Discussion</u>

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  <u>See</u> 42 U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>Rodriguez-Cirilo v. Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  <u>See Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir.) <u>cert. denied</u> 522 U.S. 819 (1997).  The premise of Blackmer's Section 1983 action is that prison officials subjected him to the following constitutional deprivations in violation of his rights under the First, Eighth and Fourteenth Amendments.

4

A.   <u>Access to the Courts</u>

From November 2005 through July 10, 2006, defendants allegedly have denied Blackmer meaningful access to the courts in violation of his First and Fourteenth Amendment rights.  "It is undisputed that inmates have a fundamental constitutional right of access to the courts."  <u>Carter v. Fair</u>, 786 F.3d 433, 435 (1st Cir. 1986) (citing <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977)). This right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Id.</u>  <u>See</u> <u>also</u> <u>Boivin v. Black</u>, 225 F.3d 36, 42 (1st Cir. 2000).  Prisons "are not required to provide comprehensive legal representation for inmates"; rather, prisons "must provide enough assistance so as to "'protect[ ] the ability of an inmate to prepare a petition or complaint.'"  <u>Carter</u>, 786 F.2d at 435 (citing <u>Bounds</u>, 430 U.S. at 828)).

To establish a claim that this right of access has been denied, an inmate must allege that he suffered actual injury. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996).  "Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual

injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. at 351.  Rather, he must demonstrate that the alleged shortcomings in the law library or legal assistance program "hindered his efforts to pursue a legal claim."  Id.  ("He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.").  The right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002).  Thus, it "follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  Id.

A prison regulation or policy may interfere with the right of access to the courts if the challenged regulation or policy bears a rational relation to legitimate penological interests.

6

See <u>Overton v. Bazzetta</u>, 539 U.S. 126, 133 (2003); <u>Lewis</u>, 518 U.S. at 361; <u>Savard v. Rhode Island</u>, 338 F.3d 23, 30–31 (1st Cir. 2003) <u>cert. denied</u> 540 U.S. 1109 (2004).  Thus, even if an inmate is able to establish that the challenged regulation or policy actually impeded his access to the courts with respect to a specific claim, he is not entitled to relief if the regulation or policy satisfies this requirement.

In support of his claims that defendants have denied him meaningful access to the courts, Blackmer alleges the following:

- from November 2005 through July 10, 2006, defendants completely barred Blackmer from accessing the NCF law library and only permitted him to access library resources and photocopies through the inmate request slip process;

- the NCF law library has inadequate computer terminals, inadequate computer training and limited hardbound resources;

- through NCF library policy, defendants discourage inmates from using the law library;

- defendants prohibited Blackmer from either giving legal assistance to, or seeking legal assistance from, another inmate;

- defendants have failed to provide Blackmer with photocopies of legal documents, and have seized legal  documents necessary to pursue his legal claims before the courts; and

- defendants have interfered with Blackmer's legal mail.

7

1.   <u>Access to Library</u>

Blackmer alleges that from November 2005 through July 10, 2006, Poulin, Dolan, Millis, Cox, Blaisdell and Wrenn completely barred him from the NCF law library and only allowed him to access library resources through the inmate request slip process. Defendants' actions allegedly interfered with his litigation currently pending in the state and federal courts.

Courts have held that allegations of complete denial of all access to a prison law library for an extended period of time violates an inmate's right to access the courts.  <u>See</u> <u>Eason v. Thaler</u>, 14 F.3d 8, 9-10 (5th Cir. 1994)(holding that allegations of a total denial of all access to the prison law library for 25 days following a prison riot stated a constitutional violation); <u>Pembroke v. Wood County, Tex.</u>, 981 F.2d 225, 229 (5th Cir. 1993)(holding that the total denial of all access to the law library for seven months violated the plaintiff's constitutional right to access the courts).  In addition, courts have held that "arbitrary limitations and restrictions on access to legal materials, . . . without the ability of inmates in administrative segregation to examine legal digests, hornbooks, and other legal materials firsthand," violate an inmate's right of access to the

8

courts.  See Edelkind v. Neustrom, Civil Action No. 05-2176, 2006
WL 2037425, at *6 n.7 (W.D. La. June 27, 2006).  See also Morrow
v. Harwell, 768 F.2d 619, 622 (5th Cir. 1985)(holding that access
to a weekly bookmobile coupled with circumscribed assistance from
law students was insufficient to afford meaningful access to the
courts) and Green v. Ferrell, 801 F.2d 765, 772 (5th Cir. 1986)
(holding that allowing inmates to select volumes twice each week
from a list of books available in a county law library and
limiting inmates to no more than two volumes at a time violated
the inmates' rights to meaningful access to the courts).

     Here, in a series of inmate request slips and appeals filed
with Poulin, Dolan, Millis, Cox, Blaisdell and Wrenn from
November 2005 through May 2006, Blackmer informed defendants of
his denial of access to the NCF library, his restricted access to
library resources through the inmate request process and the
resulting adverse impact on his pending state and federal
litigation.  The record reveals that certain restrictions
limiting Blackmer's use of the NCF library and its resources were
imposed for disciplinary reasons and legitimate safety concerns.
However, Blackmer claims that other restrictions were not imposed
for legitimate penological objectives but instead were designed

and intended to restrain his litigation and to intimidate and harass inmates who seek to pursue lawsuits against the NCF.  To the extent the library restrictions were imposed without a legitimate penological objective and have adversely impacted Blackmer's pending state and federal court litigation, I conclude that he has stated a cognizable claim based on the denial of access to the courts against Poulin, Dolan, Millis, Cox, Blaisdell and Wrenn.

2.   <u>Adequacy of Library Facilities</u>

Blackmer alleges that defendants further violated his right to access the courts by providing him with a law library that has inadequate computer terminals, inadequate computer training and limited hardbound resources.  Specifically, he alleges that the NCF "library facilities are less than adequate to meet the needs of more than 500 inmates at NCF.  The library has only 6 computer terminals connected to the LEXIS database and only a few books." He adds that because most inmates are not proficient in LEXIS or in the use of computers, the access to LEXIS is inadequate to meet the legal research needs of inmates, like Blackmer.  Through this policy, the DOC allegedly discourages inmates from using the law library.

Absent injury, an inmate's inability to use a computer, or his lack of access to a prison law library's computerized research system, does not constitute a violation of the right of access to the courts.  <u>See</u> <u>Prichard v. Guzik</u>, No. 3:03–CV–527–N, slip op. at 1–2 (N.D. Tex. 2003)(where the only access to prison legal resources is by computer, an inmate's inability to operate a computer, without establishing any injury, does not violate right to access the courts); <u>Dickens v. Filion</u>, No. 02 Civ. 3450 (DLC), 2003 WL 1621702, at *6 (S.D.N.Y. March 28, 2003) (lack of computerized research and decisions available on computer databases not a violation of the right to access the courts). Here, Blackmer alleges that the NCF law library facilities are inadequate but does not allege any ensuing harm.  While he has identified injuries resulting from his restricted access to the NCF library and its resources, as discussed above, he has not identified any injury resulting from the inadequacies of the facilities.  Accordingly, I conclude that he has failed to state a cognizable claim premised on the denial of access to the courts arising from the alleged inadequacies of the NCF law library and recommend dismissal of this claim.

### 3.   <u>Legal Assistance</u>

Blacker alleges that defendants further violated his right to access the courts by prohibiting him from either giving legal assistance to, or seeking legal assistance from, another inmate. Prisoners have no freestanding right either to law libraries or to legal advice and assistance from other inmates or law clerks. <u>See</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 231 n.3 (2001).  Rather, "inmates have a right to receive legal advice from other inmates only when it is a necessary means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." <u>Id.</u> (internal quotations omitted).  In other words, as long as inmates are assured a reasonable and adequate opportunity to present constitutionally protected claims, the prison is considered to have provided an adequate library or assistance program.  Blackmer has not made any such showing here.  He has not alleged that he has been denied advice from another inmate that was necessary to present a constitutionally protected claim.  Instead, he simply alleges that on December 16, 2005, Poulin issued a disciplinary report against him for talking when he assisted another inmate, Alan Beltran, in the library.  Accordingly, I conclude that he has

failed to allege a denial of access to the courts claim stemming from the right to receive legal assistance from another inmate and recommend dismissal of this claim in its entirety.

    4.   Access to Photocopy
         and Notary Services

Blackmer alleges that Cox ordered his legal work to be copied by request through the inmate request slip process and, as a result, NCF staff members impermissibly reviewed his confidential legal work submitted for photocopying.  He further alleges that on November 30, 2005, Dolan directed him to provide her with copies of legal documents that were to be photocopied by Poulin in the NCF library and subsequently notarized.  According to Blackmer, Poulin and Dolan failed to provide him with notarized copies, all of which were required for his action pending before the First Circuit Court of Appeals.  Construed liberally, the complaint alleges that the denial of adequate notary and photocopy services impeded Blackmer's pending federal litigation and violated his right to access the courts.

Restrictive photocopying policies that present obstacles to an inmate's access to the courts may implicate First Amendment issues and due process rights.  See Hiser v. Franklin, 94 F.3d (20 U.S. 1287, 1294 n.6 (9th Cir. 1996) cert. denied Franklin v.

<u>Hiser</u>, 520 U.S. 1103 (1997) (holding that "[a]n inmate has a right to photocopying under <u>Bounds</u> when, and only when, necessary to guarantee him meaningful access to the courts."). <u>See</u> <u>also</u> <u>Messere v. Fair</u>, 752 F. Supp. 48, 50-1 (D. Mass. 1990). In cases involving conditional restrictions on the right to access the courts, such as the denial of notary services, an inmate must show that he suffered actual injury as a result of the alleged deprivation. <u>See</u> <u>Sowell v. Vose</u>, 941 F.2d 32, 34 (1st Cir. 1991). Construed liberally, the complaint alleges that defendants subjected Blackmer to restrictive photocopying policies and failed to provide him with adequate notary services, all of which impeded his pending federal litigation. Accepting his allegations as true, I conclude that Blackmer has alleged sufficient facts to state a denial of access to the courts claim arising from access to adequate photocopy and notary services. Accordingly, for purposes of preliminary review, I conclude that he has alleged cognizable claims against Poulin, Dolan and Cox.

     5.   <u>Seizure of Legal Documents</u>

     Blackmer alleges that in October 2006, Gosselin and Burdick seized legal documents from his cell and failed to return the documents. Construed liberally, the complaint alleges that

defendants' actions interfered with Blackmer's right to access the courts.

A cause of action for a violation of the right to access courts may exist where prison officials confiscated or destroyed legal materials or papers.  <u>See</u> <u>Simmons v. Dickhaut</u>, 804 F.2d 182, 183 (1st Cir. 1986) (allegations of intentional refusal to return inmate's legal materials stated a cause of action under Section 1983).  To establish standing for an access to courts claim, an inmate must show that he has suffered actual injury traceable to the challenged conduct of prison officials – that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials.  <u>Lewis</u>, 518 U.S. at 351–53.

Here, Blackmer alleges that his legal documents were seized but does not allege any ensuing harm.  While the record demonstrates that the documents were seized from Blackmer in early October 2006, the record further reflects that the documents were returned to him on October 13, 2006.  It appears, therefore, that Blackmer is in possession of the seized documents.  Because he has not alleged that defendants' misconduct has frustrated or impeded any legal claim or otherwise

resulted in any harm, I conclude that he has failed to allege a denial of access to the courts claim based on the defendants' seizure of the documents.  Accordingly, I recommend dismissal of this claim in its entirety.

     6.  Interference with Legal Mail

Blackmer alleges that Dolan and Millis further violated his right to access the courts by routinely intercepting, seizing and confiscating his prison mail, including legal documents and inmate request slips.  Defendants' actions allegedly interfered with Blackmer's pending federal litigation.

Interference with legal mail implicates an inmate's rights to free speech and access to the courts as guaranteed by the First and Fourteenth Amendments.  See Islam v. Goord, No. 05 Civ. 7502 (RJH), 2006 WL 2819651, at *7 (S.D.N.Y. Sept. 29, 2006).  To state a claim for denial of access to the courts due to interference with legal mail, an inmate must allege that the prison official's actions hindered his efforts to pursue a legal claim.  See Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). While an inmate has a right to be present when his legal mail is opened, see Wolff v. McDonnell, 418 U.S. 539, 574–76 (1974), an isolated incident involving the inadvertent opening of mail,

without any evidence of improper motive or resulting interference with the right to counsel or to access to the courts, does not give rise to a constitutional violation.  See Davis, 320 F.3d at 351 (citations omitted); accord Lepine v. Brodeur, 1999 WL 814277, *15 (D.N.H. 1999).  Rather, "the inmate must show that prison officials 'regularly and unjustifiably interfered" with his legal mail.  The Second Circuit has held that "[t]wo incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial governmental interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received."  Davis, 320 F.3d at 351 (citations omitted).

In this action, Blackmer appears to allege that Dolan and Millis have regularly and unjustifiably interfered with his prison mail, including inmate request slips and legal documents filed in support of his litigation pending before the federal courts.  He further alleges that on April 14, 2006, Gosselin confiscated and destroyed his prison mail pertaining to the alleged misconduct of Dolan and Millis.  In an inmate request slip dated January 7, 2005, Blackmer requested Millis to locate

17

the missing legal documents that he placed in the prison mail
system to be delivered to the library for copying.  One of the
missing documents allegedly was a pleading to be filed with this
Court, in which Blackmer sought an extension of time to submit a
memorandum of law in support of his currently pending petition
for a writ of habeas corpus.  Millis forwarded this request to
Dolan on January 13, 2005.  The record is unclear as to whether
Blackmer sought further administrative review as to this
particular claim.  To the extent Blackmer alleges that
defendants' actions hindered his efforts to pursue his habeas
corpus action, I conclude that he has alleged a cognizable First
and Fourteenth Amendment claims against Dolan and Millis.  The
allegations against Gosselin involve an isolated incident of
opening of mail, without any evidence of improper motive or
resulting interference with the right to counsel or to access to
the courts.  I therefore conclude that Blackmer has failed to
state a claim against Gosselin and recommend that this claim be
dismissed.

     B.   <u>Request for Prison Transfer</u>

     Blackmer requests a transfer from the NCF to the NHSP, where
he was previously incarcerated and where the conditions of

confinement allegedly were more favorable and less restrictive.
I liberally construe the complaint to alleged a Fourteenth
Amendment due process claim arising from Blackmer's failure to be
transferred to the NHSP.

"The Due Process Clause does not protect every change in the
conditions of confinement having a substantial adverse impact on
the prisoner." Bazzetta v. McGinnis, 423 F.3d 557, 566 (6th Cir.
2005) cert. denied Barzetta v. Caruso, ___ U.S. ___, 1275 S. Ct.
381 (2006) (citing Sandin v. Conner, 515 U.S. 472, 478 (1995)).
See also Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(stating
that not every prison action that adversely affects the prisoner
requires due process, such as transfer to a substantially less
agreeable prison).  It is well-settled that a prisoner has no
constitutional right to be incarcerated in a particular prison
and that he may be transferred for any reason or for no reason at
all, regardless of differing conditions.  See Meachum v. Fano,
427 U.S. 215, 225-28 (1976).  Even a transfer to a more
restrictive facility with more burdensome conditions is within
the normal limits or range of custody which the conviction has
authorized the State to impose.  Id. at 225 (transfer of an
inmate from one correctional facility to another, without more,

does not violate the inmate's constitutional rights, even where conditions in one facility are more disagreeable).  Accordingly, I conclude that Blackmer's request to be transferred to the NHSP, or the NCF's failure to transfer him to the NHSP, does not rise to the level of a constitutional violation.  I therefore recommend dismissal of this claim and that Blackmer's request for transfer be denied.

    C.  <u>Verbal Threats</u>

Construed liberally, the complaint alleges that Cox violated Blackmer's Eighth Amendment rights by subjecting him to verbal threats and abuse.  On March 1, 2006, Cox allegedly insulted Blackmer and was "enraged, barking and expectorating into Blackmer's face."  This conduct, while unprofessional if it is true, does not state a cognizable claim under Section 1983.  It is well established that "[a]llegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983." <u>Ramirez v. Holmes</u>, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).  <u>See</u> <u>also</u> <u>Shabazz v. Cole</u>, 69 F. Supp. 2d 177 199 (D. Mass. 1999)(holding that allegations of threats, verbal harassment or profanity, without an injury or damage, do not state a claim under Section 1983)(citations omitted).

Accordingly, I recommend that this claim be dismissed.

II.  Habeas Corpus Claims

Blackmer alleges that he is unlawfully incarcerated and raises various claims challenging the constitutionality of his conviction and confinement.  Construed liberally, the complaint alleges that (1) his conviction was obtained by the prosecution's failure to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), including the failure to disclose perjured testimony of Michael Connolly, an Agent of the Drug Enforcement Administration; (2) he was denied the Sixth Amendment right to effective assistance of counsel at trial; (3) he was denied the Sixth Amendment right to appellate counsel, including denial of the right to counsel on direct appeal; (4) the trial court lacked jurisdiction to try, convict and sentence him; (5) his conviction was obtained by evidence seized pursuant to a non-arrest and an unlawful search and seizure, in violation of his Fourth Amendment right to be free from unreasonable search and seizure; (6) and he was denied the Sixth Amendment right to a speedy trial.

Because Blackmer challenges the fact or duration of his state court confinement, his claims may only be brought in a

habeas corpus petition pursuant to 42 U.S.C. § 2254.  See Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973) (holding that a prisoner cannot use a Section 1983 action to challenge the fact or duration of his confinement).  Further, the claims raised in this action are identical to claims raised in Blackmer's habeas corpus action which is currently pending before this Court.  See Blackmer v. Warden, No. N.H. Corr. Facility, 05-340-PB.  Accordingly, I recommend that the above claims be dismissed.

III. Official Capacity

    Construed liberally, the complaint seeks declaratory and injunctive relief for wrongs committed by the defendants as state actors in their official capacities.  It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in

their official capacities are "persons" under Section 1983).
Official capacity suits against officers of an agency are simply
"another way of pleading an action against an entity of which an
officer is an agent." Monell, 436 U.S. at 690 n.55.  To the
extent Blackmer intends to bring official capacity claims for
monetary relief against the remaining defendants, all of whom are
officials or employees of the NHDOC or NCF, I recommend that
those claims be dismissed.

On the other hand, official capacity actions against state
actors for prospective injunctive relief are not treated as
actions against the state and may be considered under Section
1983. See Will, 491 U.S. at 58, 71 n.10.  Thus, Blackmer is not
barred from bringing claims for prospective injunctive relief
against the remaining defendants in their official capacities.

<u>Conclusion</u>

For the reasons stated above, I conclude that Blackmer has
alleged First and Fourteenth Amendment claims based on the denial
of access to the courts against: (1) Poulin, Dolan, Millis, Cox,
Blaisdell and Wrenn arising from access to the NCF law library;
(2) Poulin, Dolan and Cox arising from access to photocopy and
notary services; and (3) Dolan and Millis arising from the

23

interference with legal mail.  I recommend dismissal of all remaining claims.

The four motions filed in conjunction with the complaint (document nos. 10, 12-14) are granted, but only to the extent Blackmer seeks to demonstrate exhaustion of administrative remedies and further amend his complaint.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> 28 U.S.C. § 636(b)(1); <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>,

792 F.2d 4, 6 (1st Cir. 1986).


                                        ___/s/ James R. Muirhead_____
                                        James R. Muirhead
                                        United States Magistrate Judge

Date: November 20, 2006

cc:   Paul Blackmer, pro se