**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Paul Blackmer


   v.                                          Civil No. 06-cv-158-JM


Warden, Northern New Hampshire
Correctional Facility, et al.


**O R D E R**

Defendant moves for summary judgment.  Plaintiff objects.

### Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one "that might affect the outcome of the suit."  Id. at 248.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmovant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the burden shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249). Neither conclusory allegations, improbable inferences, nor unsupported speculation are sufficient to defeat summary judgment. Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002). This Court's local rules provide that:

> All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party.

United States District Court District of New Hampshire Local Rule ("LR") 7.2(b)(2). In order to "properly oppose" a motion:

> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e). Fed. R. Civ. P. 56(e) also provides an avenue for depositions, answers to interrogatories, and admissions on file to supplement or oppose an affidavit.

## Discussion

This suit raises First and Fourteenth Amendment claims based upon the alleged denial of access to the courts against the following Northern New Hampshire Correctional Facility ("NCF") employees as follows:[1]

(1) Poulin, Dolan, Millis, Cox, Blaisdell and Wrenn for claims arising from the alleged denial of access to the law library;

(2) Poulin, Dolan and Cox for claims arising from the alleged denial of access to photocopy and notary services; and

---

[1] These are official capacity claims wherein Blackmer seeks prospective injunctive relief.

3

(3) Dolan and Millis for claims arising from alleged interference with legal mail.

1. <u>Plaintiff's Failure to Comply with Affidavit Requirement</u>

Plaintiff has failed to comply with the affidavit requirements in Fed. R. Civ. P. 56(c) and (e), and the requirement in LR 7.2(b) that he provide "a short and concise statement of material fact in opposition to the motion for summary judgment," though Plaintiff is aware of these requirements.  Plaintiff is also aware of LR 7.2(b)(2), which requires him to either properly oppose the facts set out in the motion for summary judgment, or to have those facts deemed admitted, as evidenced by the fact that Blackmer had a motion for summary judgment denied on March 2, 2007 for failing to provide "a short and concise statement of material fact" under LR 7.2(b)(1) and for failing to comply with Rule 56(c).  <u>See</u> <u>Blackmer v. N. N.H. Corr. Facility</u>, Civ. No. 05-cv-340-PB.  Also, he is aware of the need to have his statements notarized, as denial of a notary for that purpose was one of his claims for relief in this action.  Despite that, Plaintiff has neither sworn an oath nor affirmed any facts in his opposition under penalty of

perjury.  See 28 U.S.C. § 1746 (setting out requirements for verifying unsworn declarations).[2]

2.   Denial of Access to the Courts

The prison is required to provide Blackmer with meaningful access to legal research materials; they may do so by providing him with direct access to the library or providing him with the assistance of a person trained to conduct legal research.  See Bounds v. Smith, 430 U.S. 817, 828 (1977) (The right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); see also Lewis v. Casey, 518 U.S. 343, 350-51 (1996); Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986).  In order to state a claim for denial of access to the courts, a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  Lewis, 518 U.S. at 351.

Restrictive photocopying policies that present obstacles to an inmate's access to the courts may implicate First Amendment

---

[2]Additionally, plaintiff has failed to comply with the rules of this Court governing format, see LR 5.1, and the page limit on memoranda, see LR 7.1(a)(3).  Neither of these violations of local rules is relevant to my summary judgment ruling.

issues and due process rights.  See Hiser v. Franklin, 94 F.3d 1287, 1294 n.6 (9th Cir. 1996) (citing Lewis for the proposition that "[a]n inmate has a right to photocopying under Bounds when, and only when, necessary to guarantee him meaningful access to the courts."); see also Messere v. Fair, 752 F. Supp. 48, 50-1 (D. Mass. 1990).  In cases involving restrictions that may or may not impact an inmate's right to access the courts, such as the denial of notary services, an inmate must show that he suffered actual injury as a result of the alleged deprivation.  See Sowell v. Vose, 941 F.2d 32, 34 (1st Cir. 1991).

Blackmer's suit alleges that he was denied access to the Courts by the defendants denying him access to the law library, to photocopying services, and to notary services.  Defendants move for summary judgment, arguing that Blackmer has not properly shown or alleged that he was denied library, photocopy, or notary access or services to which he is constitutionally entitled, that any restriction placed on Blackmer was not legitimately and constitutionally imposed for valid penological reasons, and that his pending legal actions were hampered by the defendants' actions.  I examine each claim in turn.

A. <u>Interference With Legal Mail</u>

Blackmer's complaint alleges that Dolan and Millis violated his right of access to the courts by routinely intercepting, seizing and confiscating his prison mail. The uncontroverted evidence supplied by Officer Dolan is that she:

> never intentionally interfered or intercepted Mr. Blackmer's mail in order to prevent him from defending his cases and/or filing documents for his litigation. (She). . . never confiscated inmate request slips from Mr. Blackmer, unless the slips violated prison rules . . . (she has) . . . never confiscated inmate request slips to prevent his requests from being heard.

Document no. 56-10, Ex. D.  Further, retired Manager Millis swore as follows:

> I have never confiscated, seized, handled or reviewed Mr. Blackmer's legal mail or legal documents. The only time I would ever review . . . an inmate's legal mail or documents would be if one of my staff found contraband attached to the mail. To the best of my knowledge that has never happened with respect to Mr. Blackmer.

Document no. 56-14, Exh. H.  Even if I were to ignore the plaintiff's omission of an oath or affirmation, his memorandum, which discusses this claim, does not reference a single fact in refutation of the sworn testimony of Dolan and Millis. Pl. Mem. Pt. IV, p. 10.

Defendants have demonstrated an absence of genuine issues of material fact on the legal mail claim. The facts show there was no interference with legal mail by either officer. Summary judgment is entered for Dolan and Millis on this claim.

B.  Access to Photocopy and Notary Services

Blackmer alleges that Major Cox ordered him to have his legal work copied by requesting copies through the inmate request slip ("IRS") process. As a result, he claims, NCF staff members impermissibly reviewed his confidential legal work submitted for photocopying. He further alleges that on November 30, 2005, Dolan directed him to provide her with copies of legal documents that were to be photocopied and notarized by Poulin in the NCF library. According to Blackmer, Poulin and Dolan failed to provide him with notarized copies, all of which were required for his action pending before the First Circuit Court of Appeals. Construed liberally, the complaint alleges that the denial of adequate notary and photocopy services impeded Blackmer's pending federal litigation and violated his right to access the courts.

Major Cox, Ms. Poulin and Officer Dolan have each submitted affidavits which address the photocopy and notary issues. Major Cox affirmed the following under pains and penalties of perjury:

16. I also understand that Mr. Blackmer claims he was denied access to the courts because others and myself have hindered his efforts to obtain photocopies and notarizes.

17. I am not involved on a day-to-day basis with inmates' requests for copies and notarized documents. This is done on the unit level. If Mr. Blackmer had a problem and wanted to speak with me I would have investigated and addressed the issue. The only time I get involved with copying and/or notary issues is if someone is not following proper procedure.

18. For example, if an inmate goes to Ms. Poulin to make copies, she cannot deny copies for that inmate, unless prison accounts has notified her the specific inmate does not have sufficient funds in his account to cover copying expenses. She cannot simply make that determination herself. There have been situations where Ms. Poulin did not make copies for an inmate because she said they did not have sufficient funds. However, because accounts had not provided her with that information I had to instruct her that was not proper procedure and not within the prison policy. However, everyone is now aware of the proper policy and acts accordingly.

19. I am not aware of any situation where Ms. Poulin and/or Ms. Dolan were supposed to make copies and notarize documents for Mr. Blackmer and either refused to do so; intentionally failed to do so; intentionally sent them back late or in some way tried to hinder Mr. Blackmer from accessing the courts by not providing him copies he needed for his cases. If I thought that a member of the prison staff was intentionally harassing and/or hindering Mr. Blackmer from preparing and filing his legal documents I would take appropriate action against that staff member.

> 20. I have never taken documents from Mr. Blackmer to be copied and intentionally failed to deliver them to the library for copying. I have never tried to hinder Mr. Blackmer's access to the courts by denying him photocopying and/or notary services.

Document no. 56-9. Ms. Poulin affirmed the following:

> 26. I would never intentionally fail to return inmates documents provided to me for copying, unless I found something illegal. If I stated in my report and if I told Mr. Blackmer I did not receive any documents, than that is the truth and an accurate statement.
>
> 27. Mr. Blackmer's allegations and complaints are not always rational. For example, in the same IRS mentioned above, dated 12/2/05 Mr. Blackmer mentions that I told him he did not have sufficient funds for copies. However, as you can see from a different IRS dated 12/2/05, a photocopy request and a withdrawal slip (attached as Composite Exhibit "4"), I in fact made 16 copies for Mr. Blackmer on that date and he did have the money in his account. Attached as Composite Exhibit "5" is another photocopy request form and inmate fund receipt dated 12/12/05, documenting that I made 27 copies for him totaling $2.70.
>
> 28. Upon information and belief, Mr. Blackmer claims that prison staff and myself have been failing to copy and notarize documents for him. He specifically mentions an incident in late November 2005 where he claims he sent documents to me to be copied and notarized. As is demonstrated by paragraph 27 above, I made copies for Mr. Blackmer in early December. I do not know if these were the copies to which he is referring but if Mr. Blackmer brings documents to me or sends them through the IRS system, I always provide him

>with his requested copies. In fact, I made and make copies for Mr. Blackmer on a regular basis, more than the average inmate. It would not surprise me, if given the amount of legal work Mr. Blackmer generates, that he was confusing his various requests for copies.
>
>29. In order for Mr. Blackmer to have something notarized, he needs to appear for that in person. Additionally, if I am not available there are several other staff members who can notarize documents for inmates.

Document no. 56-3. Officer Dolan affirmed the following:

>10. I cannot recall the specific date, incident, or documents to which Mr. Blackmer refers in his Complaint but I have never intentionally received documents or picked up documents in the request slip box to be copied and notarized from Mr. Blackmer and failed to return the documents to him.
>
>11. Generally, if inmates need documents copied they can place them in the request slip box located on the unit to be picked up and sent to the library for copying. The copies are returned via mail. If I happen to pick up the photocopy request out of the box I take the request directly to the library. I do not read the documents to be copied. I simply look to see if there is a photocopying request form attached, an IRS, and a cash withdrawal slip so that the funds can be removed from the inmate's account. Other than the above, the extent of my involvement with photocopying and notarizing is picking up the requests and physically delivering the request to the library.
>
>12. I am very familiar with Mr. Blackmer's photocopying requests. In the two years I have been assigned to C Block Mr. Blackmer's [sic] has

11

submitted a voluminous amount of copying requests, greater than average when compared to other inmates.  Mr. Blackmer could go a week without filing any requests and then the next week he could file 13 requests in a week.  Additionally, Mr. Blackmer will not speak to me and from my experience actually prefers to communicate via IRSs.  To the best of my knowledge, Mr. Blackmer has never complained to me that I have misplaced or failed to return documents to him that he requested be copied.

13.  Mr. Blackmer does not appear to have any problems accessing the library's resources through the IRS system even while he was restricted from using the library.

14.  To have documents notarized an inmate must appear in person.  Once documents are returned from copying, the inmate can go [sic] the library in person to get them notarized.  The documents will only be notarized in the presence of the inmate.  If an inmate does not want to send their documents through the mail they can visit the recreational library during their allotted time and have them copied and notarized at the same time.  Additionally, if Mr. Blackmer was not allowed to access the library to use its' notary services there are other notaries among the prison staff with whom he could make an appointment.  I have never intentionally hindered Mr. Blackmer's efforts to have documents notarized.

15.  I have never tried to hinder Mr. Blackmer's access to the courts by denying him photocopying and/or notary services.

16.  Mr. Blackmer claims that myself and Dan Millis have intercepted, seized and confiscated his legal documents as well as grievances in order to hinder his access to the courts and

hinder his filing grievances against prison staff, myself and Millis included.

17. I have never intentionally interfered or intercepted Mr. Blackmer's mail in order to prevent him from defending his cases and/or filing documents for his litigation. I have never confiscated inmate request slips from Mr. Blackmer, unless the slips violated prison rules and policy, and failed to provide them to the proper party for response. I either respond to his IRS myself or pass them on to the proper party. I have never confiscated inmate request slips to prevent his requests from being heard.

18. On numerous occasions, Mr. Blackmer would submit IRS that did not contain a request. As noted above, this is a potential disciplinary violation. After several warnings, Mr. Blackmer continued to file IRS that did not contain requests. I have prepared Disciplinary reports ("D Report") against Mr. Blackmer for failing to properly use the IRS. If a D-Report is prepared, the IRS, which is the subject of the report, is attached to the D-Report as evidence and does not get sent back to the inmate with a response.

19. I do not read Mr. Blackmer's or any other inmates legal. As noted above, if I pick up documents to be copied, I simply take those documents to the library. I do not read the documents to be copied, I only review to make sure the request is in the proper format and contains the proper request slips. Additionally, Mr. Blackmer can and he does put his legal mail to be sent out in a sealed envelope marked confidential so that no one can open and read his material. Similarly, he can put a grievance in the box, seal it and mark it confidential if he wants only the Warden, for example, to read something.

> 20. I would never destroy IRS or grievances filed against me or any other staff member. I understand that potentially having unjustified grievances filed against me is part of the nature of my job.

Document no. 56-10.

Blackmer submitted neither an affidavit nor a refutation of defendants' statement of material facts.[3] As a consequence, the facts as stated by these defendants are deemed admitted. LR 7.2(b)(2) and Fed. R. Civ. P. 56(c). There are no genuine issues of material facts on these issues. Defendants Cox, Poulin and Dolan are granted summary judgment on these claims.

C. <u>Denial of Access to the Law Library</u>

"It is undisputed that inmates have a fundamental constitutional right to access the courts." <u>Carter v. Fair</u>, 786 F.2d 433, 435 (1st Cir. 1986 (citing <u>Bounds</u>, 430 U.S. at 828). A law library is only one of the accepted means of access to the courts. <u>Bounds</u>, 430 U.S. at 830. "To make a claim that access to the courts has been denied, then, an inmate must show 'that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.'" <u>Graham

---

[3] Even if Blackmer's entire memorandum were treated as an affidavit, the only copying/notary reference is an alleged seventeen-day delay in copying. He has not offered a hint as to how that delay adversely impacted any pending litigation.

v. Cattell, Civ. No. 02-377-PB, 2005 WL 67065 at *2 (D.N.H. Jan. 12, 2005) (quoting Lewis, 518 U.S. at 351). In addition, plaintiff's constitutional right of access must be balanced with the need of the prison to manage the safety and security of staff and other inmates.

It is undisputed that from December of 2005 to July of 2006 Blackmer was barred from the library. He was permitted to, and did extensively, access law materials in the law library through the inmate request system.

Major Cox and Ms. Poulin have submitted affidavits with regard to why he was denied direct library access. Mr. Blackmer has not provided any counter affidavit. The undisputed facts are gleaned from the Cox and Poulin affidavits.

In the months leading up to December 12, 2005, Blackmer's conduct in the library became increasingly erratic, irrational, disruptive and disrespectful.[4] Blackmer was threatening and aggressive toward staff and disruptive to other inmates. He threatened Unit Manager Thyng, Ms. Poulin and Major Cox. As a result, on December 12, 2005, Major Cox physically restricted

---

[4] In his objection his disrespect continues as he refers to Ms. Poulin as a "Rabid Chihuahua dingbat," "stone ignorant," and "arrogant".

Blackmer from the library until he could demonstrate that he was able to conduct himself appropriately.

Major Cox monitored Blackmer but his behavior continued to be agitated, accusatory and disrespectful.  Blackmer was evaluated by mental health services, but he refused treatment.  On March 1, 2006, Major Cox and Ms. Poulin met with Blackmer to discuss library privileges.  Blackmer responded with unprovoked anger, vulgarity, and aggression.  In June of 2006, Blackmer met with Major Cox and, in a civil manner, said that he would abide by the rules and control himself.  In July of 2006 his privileges were restored and he has subsequently had direct access to the library.

The undisputed facts are that Blackmer's library restrictions were imposed for legitimate penological reasons, namely the safety, welfare and security of library staff and inmates using the library.  Furthermore, the inmate request system did permit Blackmer meaningful access to the courts.  In the two cases pending in this court during the period in question, using the inmate request systems, Blackmer filed ten pleadings in his habeas corpus case, filed the complaint and four filings in this case, appealed the denial of a certificate of

appealability to the First Circuit, and obtained an extension for a filing in the United States Supreme Court.  The undisputed facts demonstrate that Blackmer was not denied meaningful access to the courts.  Poulin, Dolan, Millis, Cox, Blaisdell and Wrenn are entitled to summary judgment on this count.

Conclusion

The motion for summary judgment (Document no. 56) is granted.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: April 22, 2008

cc:   Paul Blackmer, pro se
      Deborah B. Weissbard, Esq.